THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **WESLEY CHANCELLOR, # M51355,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> **ANTHONY WILLS, C/O CHOATE,** ) <br> **C/O CAMPBELL, C/O TAYLOR,** ) <br> **C/O KEMPFER, C/O McDONALD,** ) <br> **C/O WILLIAMSON, and** ) <br> **LIEUTENANT BRIDGES,** ) <br> ) <br> **Defendants.** ) | Case No. 3:24-cv-01574-GCS |

## MEMORANDUM AND ORDER

**SISON, Magistrate Judge:**

Plaintiff Wesley Chancellor is an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Lawrence Correctional Center. He brings this civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while he was confined at Menard Correctional Center ("Menard"). He claims that he was subjected to retaliation and excessive force including assaults that injured him. (Doc. 1). Plaintiff seeks monetary damages. (Doc. 1, p. 19).

Plaintiff's Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims.[1] *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is

---

[1] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 6) and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the IDOC.

legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plaintiff alleges that on July 6, 2023, on Annex B-Wing of Menard's North 2 cellhouse, Defendant Choate made homosexual comments toward Plaintiff and other inmates, remarking on their genitals. (Doc. 1, p. 8). Later in the day, Plaintiff asked Choate to stop making gay jokes around him. Choate retaliated by refusing to allow Plaintiff access to a shower or bathing facilities. *Id.* at p. 10.

On July 7, 2023, Plaintiff asked Choate to allow him to file a Prison Rape Elimination Act ("PREA") complaint. Choate laughed in response and cancelled yard for Plaintiff. Plaintiff was later able to make a PREA complaint and reported Choate's behavior to Lt. Hank, who said he would investigate.

After the PREA interview, Defendants Choate and Campbell escorted Plaintiff back to his cell; Plaintiff's hands were cuffed behind his back. (Doc. 1, p. 11). As they walked, Choate pushed Plaintiff in the back. Plaintiff asked Choate why he was pushing him for no reason and asked to speak to a Major. Choate responded, "you want to file a PREA complaint against me get your bitch ass in your cell," then he pushed Plaintiff into the cell and followed him in. *Id*. Choate grabbed Plaintiff's buttocks in a sexual manner, then Defendants Choate and Kempfer pushed Plaintiff into a wall, slammed him to the floor, and shackled Plaintiff's legs. Campbell watched the assault without intervening. *Id.*

at p. 12.

Plaintiff asked to make another PREA complaint and requested medical care. Choate, Campbell, and Kempfer took Plaintiff to a bullpen, but he was not given any medical or mental health care or allowed to make a PREA complaint. (Doc. 1, p. 12). Attempting to cover up the assault, Choate filed a false disciplinary report against Plaintiff for disobeying a direct order (DR No. 20230140311). It was later dismissed and expunged. *Id.* at p. 13.

Defendant Warden Wills had been informed about previous abusive conduct by Choate and Kempfer through complaints and grievances filed by Plaintiff and others over a period of months, but Wills did nothing to control these officers' behavior. (Doc. 1, p. 12, 20-21).

Plaintiff filed a grievance on July 11, 2023, against Choate, Campbell, and Kempfer (No. 259-7-23) regarding the events of July 7, 2023. (Doc. 1, p. 22-26). After this, Plaintiff experienced frequent harassment, retaliation, and threats by these defendants' colleagues. *Id.* at p. 13.

On August 14, 2023, a group of unknown officers took Plaintiff, in handcuffs and leg shackles, to the Bureau of Identification for a transfer. On the way, these officers threatened Plaintiff, saying "this is the guy who likes to make PREA calls and write grievances. I'll show him what PREA is." (Doc. 1, p. 14). One officer tightened Plaintiff's handcuffs, cutting off his circulation and feeling. They refused to loosen the cuffs when Plaintiff asked; they continued the verbal harassment.

Defendant Lt. Bridges interrupted the escort by directing Defendants Taylor,

McDonald, and Williamson (of the Menard Emergency Response Tactical "ERT" Team) to take Plaintiff back to his cell, falsely claiming Plaintiff was being aggressive with line staff. Taylor, McDonald, and Williamson, dressed in riot helmets and body armor, and armed with a baton and OC pepper spray, showed up to escort Plaintiff. (Doc. 1, p. 15). Plaintiff was still in rear handcuffs and leg restraints. They immediately threatened to "take this fake Mexican to that blind spot and kick his ass." *Id*. In fear for his life and safety, Plaintiff began yelling for help. Taylor slammed Plaintiff to the floor. Plaintiff did not resist, saying he did not want any problems, but Taylor slammed him to the floor again. Plaintiff's head hit a table, knocking him unconscious and opening a large wound. *Id.* at p. 16. McDonald and Williamson did not intervene to prevent the attack, and Plaintiff believes they struck him too. Plaintiff was taken to the emergency room, and he received multiple staples for a head laceration. *Id.* at p. 27-31.

Plaintiff asserts that Bridges lied about Plaintiff being aggressive with line staff as a pretense to activate the ERT team and have Taylor, McDonald, and Williamson assault him, in retaliation for filing Grievance No. 259-7-23 and PREA complaints against Choate. (Doc. 1, p. 16-17).

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

> Count 1: First Amendment retaliation claim against Choate for denying Plaintiff shower and yard privileges, beating him, and filing a false disciplinary report on him, after Plaintiff objected to Choate's homosexual jokes and filed a PREA complaint on Choate in July 2023.

| | |
|---|---|
| Count 2: | Eighth Amendment excessive force claim against Choate and Kempfer for shoving and slamming Plaintiff to the floor on July 7, 2023. |
| Count 3: | Eighth Amendment claim against Campbell for failing to intervene in the July 7, 2023 attack on Plaintiff by Choate and Kempfer. |
| Count 4: | Eighth Amendment deliberate indifference claim against Choate, Kempfer, and Campbell for denying Plaintiff access to medical and mental health care after the July 7, 2023 attack. |
| Count 5: | Eighth Amendment claim against Wills for failing to prevent Choate's and Kempfer's misconduct. |
| Count 6: | Eighth Amendment excessive force claim against Taylor for beating Plaintiff on August 14, 2023, and against McDonald and Williamson for beating Plaintiff and/or failing to stop Taylor from beating him on August 14, 2023. |
| Count 7: | First Amendment retaliation claim against Bridges for setting up the August 14, 2023 assault on Plaintiff, and against Taylor, McDonald, and Williamson for the beating, because Plaintiff filed a grievance and PREA complaints against Choate. |
| Count 8: | State law claim for assault and battery against Choate and Kempfer for their actions on July 7, 2023, and against Taylor, McDonald, and Williamson for their actions on August 14, 2023. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading**

**standard**.[2]

### Count 1

Prison officials may not retaliate against inmates for exercising their First Amendment rights to file grievances, lawsuits, or otherwise complain about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). To state a retaliation claim, a prisoner must allege that he engaged in constitutionally protected activity and that a prison official took adverse action against him because he engaged in the protected activity. *See Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). Plaintiff's allegations are sufficient to support his retaliation claim against Choate. Thus, Count 1 will proceed for further review.

### Count 2

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018). A plaintiff must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Plaintiff has stated a colorable excessive force claim against Choate and Kempfer for the events of July 7, 2023. Count 2 will also

---

[2]   *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

proceed.

### Count 3

The Seventh Circuit recognizes "failure to intervene" as a basis for a constitutional violation under the Eighth Amendment. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). To state such a claim, a plaintiff must sufficiently allege a defendant (1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Here, Plaintiff alleges that Campbell observed Choate and Kempfer shoving him and slamming him to the floor on July 7, 2023, yet did nothing to stop them. Count 3 may therefore proceed against Campbell.

### Count 4

A prison official's deliberate indifference to a prisoner's serious medical or mental health needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *See Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical or mental health condition, and (2) the defendant acted with deliberate indifference to his medical/mental health needs. *Id.* Notably, a guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996).

Plaintiff does not detail the injuries he sustained after Choate and Kempfer shoved him against a wall and onto the floor, but he allegedly asked for medical attention which Choate, Kempfer, and Campbell failed to obtain. At this stage, Plaintiff may proceed with

Count 4 against these defendants.

### Count 5

Plaintiff seeks to hold Wills responsible for Choate's and Kempfer's misbehavior because Wills, Menard's chief administrative officer, had allegedly been placed on notice of their abuses through complaints and grievances filed by Plaintiff and other inmates. Plaintiff does not provide any copies of such complaints or give further details. He also does not allege that Wills was present or otherwise aware of the specific incidents he describes in the Complaint.

To be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). There is no supervisory liability in a civil rights action filed pursuant to § 1983. Nothing in the Complaint suggests that Wills was personally involved in or responsible for Choate's or Kempfer's misconduct. Wills's supervisory authority is not enough for liability to attach, and the vague allegations that he was "on notice" are likewise insufficient to sustain a constitutional claim against him. Count 5 and Wills will be dismissed from the action.

### Count 6

Under the authorities outlined above in Count 2, Plaintiff has stated a viable excessive force claim against Taylor, McDonald, and Williamson for the events on August 14, 2023. He may also proceed against McDonald and Williamson on the theory that they failed to intervene when Taylor slammed him to the floor. *See Wilkins*, 559 U.S. 34; *Harper*, 400 F.3d at 1064.

### Count 7

Plaintiff alleges that the attack he suffered on August 14, 2023, was orchestrated by Bridges and carried out by Taylor, McDonald, and Williamson, in retaliation for Plaintiff's complaints against Choate for the events of July 6 and 7, 2023. The Complaint thus "sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). Count 7 for retaliation may proceed against Bridges, Taylor, McDonald, and Williamson

### Count 8

Plaintiff's allegations of excessive force in Counts 2 and 6 also support an Illinois state law claim for assault and battery. *See, e.g.*, *Shea v. Winnebago County Sheriff's Department*, No. 17-3078, 746 Fed. Appx. 541, 548 (7th Cir. Aug. 16, 2018) (discussing assault and battery under Illinois law). Because Count 8 derives from the same facts as Plaintiff's federal excessive force claims, it will also proceed against Choate, Kempfer, Taylor, McDonald, and Williamson. *See* 28 U.S.C. § 1367(a); *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).

### MOTION FOR RECRUITMENT OF COUNSEL (DOC. 2)

The Motion for counsel (Doc. 2) is **DENIED** without prejudice. First, Plaintiff failed to sign his motion as required by Federal Rule of Civil Procedure 11. (Doc. 2, p. 2). Further, there is no constitutional or statutory right to counsel in federal civil cases. *See Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). In determining whether to recruit counsel, the Court considers whether the *pro se* party has made reasonable efforts to

secure counsel on his own and his ability to litigate the case on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff states he has written to about seven lawyers but has received no response. He does not provide copies of any rejection letters. Finally, at this early stage of the litigation, it is difficult to accurately evaluate the need for assistance of counsel, so recruitment of counsel would be premature. S*ee, e.g.*, *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) (stating that "until the defendants respond to the complaint, the plaintiff's need for assistance of counsel . . . cannot be gauged."). If Plaintiff encounters difficulties in self-representation as this case proceeds, he may refile his motion seeking recruitment of counsel. If he chooses to renew his request, he should submit at least three rejection letters from attorneys to demonstrate that he has made reasonable efforts to obtain counsel on his own.

### DISPOSITION

The Complaint states colorable claims in Count 1 against Choate, Count 2 against Choate and Kempfer, Count 3 against Campbell, Count 4 against Choate, Kempfer, and Campbell, Counts 6 against Taylor, McDonald, and Williamson, Count 7 against Bridges, Taylor, McDonald, and Williamson, and Count 8 against Choate, Kempfer, Taylor, McDonald, and Williamson. Count 5 and Defendant Anthony Wills are **DISMISSED** from the action without prejudice.

The Clerk shall prepare for C/O Choate, C/O Campbell, C/O Taylor, C/O Kempfer, C/O McDonald, C/O Williamson, and Lt. Bridges: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and

this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court

will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: December 23, 2024.**

*Gilbert C. Sison*

Digitally signed by Judge Sison
Date: 2024.12.23 12:52:46 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so**.